1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    KATE KOELLER, et al.,                        Case No.  25-cv-04549-VKD

         Plaintiffs,
9
                                                  **ORDER DENYING MOTION TO**
10       v.                                       **REMAND**

11   NIXPLAY, INC., et al.,                       Re: Dkt. No. 21

         Defendants.
12

13

14        On May 29, 2025, defendants Nixplay, Inc. and Creedon Technologies USA, LLC

15   removed this action from the Superior Court for the County of Santa Clara, invoking the Court's

16   diversity jurisdiction, 28 U.S.C. § 1332.  *See* Dkt. No. 1.  On July 28, 2025, plaintiffs Kate

17   Koeller, Jeff Koeller, Matt Davidson, and Amy Boleski filed a first amended complaint.  Dkt. No.

18   16.  On August 11, 2025, defendants filed an amended notice of removal.  Dkt. No. 19.  On

19   August 18, 2025, plaintiffs moved to remand this action back to state court.  Dkt. No. 21.

20   Defendants opposed the motion.  Dkt. No. 29.  On September 23, 2025, the Court heard oral

21   argument on the motion.  Dkt. No. 38.  Thereafter, as permitted by the Court, the parties engaged

22   in limited jurisdictional discovery and filed supplemental briefs.  *See* Dkt. Nos. 39, 59, 60.

23        Upon consideration of the moving and responding papers, supplemental briefs, and oral

24   arguments presented, the Court denies plaintiffs' motion to remand.[1]

25   **I.    BACKGROUND**

26        On April 22, 2025, plaintiffs Ms. Koeller, Mr. Koeller, and Mr. Davidson filed this action

27

28   _____

[1] All parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 10, 11.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   in the Superior Court for the County of Santa Clara, asserting state law claims for breach of

2   contract and for violations of the California Consumer Legal Remedies Act, California's False

3   Advertising Law, and California's Unfair Competition Law.  *See* Dkt. No. 1-1 ¶ 2, Ex. A.  On

4   May 29, 2025, defendants removed the action to this Court, asserting diversity jurisdiction

5   pursuant to 28 U.S.C. § 1332.  Dkt. No. 1 ¶ 1.  The May 29, 2025 notice of removal states that Ms.

6   Koeller and Mr. Koeller are citizens of Illinois, and that Mr. Davidson is a citizen of California.

7   *Id.* ¶¶ 1-2.  The notice also states that Nixplay, Inc. is a citizen of Delaware, its place of

8   incorporation, and Colorado, its principal place of business, and that Creedon Technologies USA,

9   LLC is a Minnesota LLC with offices in Minnesota and Colorado.  *Id.* ¶¶ 4, 5.

10          On July 28, 2025, plaintiffs filed a first amended complaint, joining Ms. Boleski as a

11  plaintiff and adding state law claims for negligent misrepresentation and intentional

12  misrepresentation.  Dkt. No. 16.  The amended complaint alleges that Ms. Koeller and Mr. Koeller

13  are citizens of Illinois, Mr. Davidson is a citizen of California, and Ms. Boleski is a citizen of

14  Colorado.  *Id.* ¶¶ 5-8.

15          On August 11, 2025, defendants filed an amended notice of removal.  Dkt. No. 19.  The

16  amended notice states that Nixplay, Inc. is a citizen of Delaware, where it is incorporated.  *Id.* ¶ 5.

17  It further states that Creedon Technologies USA, LLC is a citizen of Minnesota.  *Id.* ¶ 6.

18  However, the amended notice asserts that neither defendant has a principal place of business or an

19  office in Colorado.  *See id.* ¶¶ 5, 6.

20          On August 18, 2025, plaintiffs moved pursuant to 28 U.S.C. § 1447(c) to remand this case

21  to state court, arguing that complete diversity is lacking because defendants "are judicially

22  estopped from changing their citizenship for the purposes of diversity, as they specifically

23  removed this action from state court on the basis of being citizens of Colorado."  Dkt. No. 21 at 3.

24  Thereafter, the Court directed all parties to file statements disclosing their citizenship pursuant to

25  Rule 7.1 of the Federal Rules of Civil Procedure.  Dkt. No. 33.  The Court noted that Creedon

26  Technologies USA, LLC had not identified all of its members and the citizenship of those

27  members, and Nixplay, Inc. had not identified its principal place of business, as required for

28  determining citizenship.  *Id.* at 1-2.

United States District Court
Northern District of California

1       All parties filed Rule 7.1 statements identifying their citizenship. Dkt. Nos. 35, 36.

2    Plaintiffs' statement restates that Ms. Koeller and Mr. Koeller are citizens of Illinois, Mr.

3    Davidson is a citizen of California, and Ms. Boleski is a citizen of Colorado. Dkt. No. 35.

4    Defendants' statement indicates that Nixplay, Inc. is a citizen of Delaware, its place of

5    incorporation, and the United Kingdom, its principal place of business. Dkt. No. 36 at 2.

6    Defendants' statement also discloses that Creedon Technologies USA, LLC has only one member,

7    Creedon Technologies HK Limited. *Id.* at 1. Defendants claim that Creedon Technologies HK

8    Limited is a citizen of Hong Kong, and therefore, Creedon Technologies USA, LLC is a citizen of

9    Hong Kong. *Id.*

10       The Court held a hearing on plaintiffs' motion to remand on September 23, 2025. Dkt. No.

11    38. Following discussion at the September 23, 2025 hearing, the Court granted plaintiffs' request

12    for expedited jurisdictional discovery limited to the citizenship of defendants. Dkt. No. 39. After

13    undertaking jurisdictional discovery and with the Court's leave, the parties submitted

14    supplemental briefs. Dkt. Nos. 59, 60.

15   **II.    LEGAL STANDARD**

16      **A.    Removal Jurisdiction**

17       Removal of a state court action to federal district court is proper where the federal court

18    would have original subject matter jurisdiction over the complaint. 28 U.S.C. § 1441. Federal

19    district courts have diversity jurisdiction over civil actions in which the matter in controversy

20    exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between citizens of

21    different states. 28 U.S.C. § 1332. "[Diversity] is determined (and must exist) as of the time the

22    complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d

23    1129, 1131 (9th Cir. 2002). Courts must look at the "actual state of things" or "the facts on the

24    ground" when evaluating a party's citizenship in a diversity case. *See Royal Canin U. S. A., Inc. v.*

25    *Wullschleger*, 604 U.S. 22, 36 n.5 (2025) (internal quotation and citation omitted); *see also*

26    *Strotek*, 300 F.3d at 1132 ("[J]urisdictional *facts*, not fiction even if truly believed, are dispositive.

27    . . . actual citizenship controls[.]"). "Once jurisdiction attaches, a party cannot thereafter, by its

28    own change of citizenship, destroy diversity." *Strotek*, 300 F.3d at 1132.

1    The removal statutes are strictly construed against removal and place the burden on the

2    defendant to demonstrate that removal is proper. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d

3    1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). An

4    action must be remanded to the state court if it appears at any time before final judgment that the

5    court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

6    **B.    Amendment of Removal Notice**

7    Like a complaint, a notice of removal is subject to the standards of Rule 8. *See Dart*

8    *Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("By design, § 1446(a)

9    tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil

10    Procedures."); Fed. R. Civ. P. 8. Congress intended to "simplify the 'pleading' requirements for

11    removal" and to clarify that courts should "apply the same liberal rules [to removal allegations]

12    that are applied to other matters of pleading." *Dart Cherokee*, 573 U.S. at 87 (citing H.R. Rep.

13    No. 100-889, at 71 (1988)). Generally, courts will allow removing parties to clarify "merely

14    defective" allegations in support of removal jurisdiction. *See, e.g.*, *Barrow Dev. Co. v. Fulton Ins.*

15    *Co.*, 418 F.2d 316, 317 (9th Cir. 1969); *Doe v. Deutsche Lufthansa Aktiengesellschaft*, No. 23-cv-

16    04413-SI, 2025 WL 2578241, at *1 (N.D. Cal. Sept. 5, 2025) ("After the 30 day period [for filing

17    a notice of removal], removal petitions cannot be amended to add allegations of substance, but

18    only to clarify defective allegations of jurisdiction.") (citing *Barrow*, 418 F.2d at 317-18).

19    **C.    Plaintiffs' Request for Judicial Notice**

20    Plaintiffs request that the Court take judicial notice of two documents that Nixplay, Inc.

21    filed with the SEC: (1) a letter dated November 17, 2022 regarding "Offering Statement on Form

22    1-A Filed September 30, 2022"; and (2) a document dated March 20, 2023 titled "Offering

23    Circular." Dkt. No. 37. Defendants do not oppose the request for judicial notice.

24    A court may take notice of public records, but not of disputed facts stated in public

25    records. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citing *Lee v.*

26    *City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). Documents filed with the SEC are

27    properly subject to judicial notice. *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540

28    F.3d 1049, 1064 n.7 (9th Cir. 2008) (holding that district court properly took judicial notice of

United States District Court
Northern District of California

4

1    publicly available financial documents and SEC filings).  However, because statements of fact

2    contained in the documents may be subject to reasonable dispute, the Court takes judicial notice of

3    the existence of statements in the filings, but not the truth of those statements.  *See City of Pontiac*

4    *Gen. Emps.' Ret. Sys. v. Bush*, No. 20-cv-06651-JST, 2022 WL 1467773, at *2 (N.D. Cal. Mar. 1,

5    2022).  For the reasons explained below, these records are not material to the disposition of this

6    motion.

7    **III.    DISCUSSION**

8            The parties do not dispute the amount in controversy or plaintiffs' citizenship.  They

9    disagree only about defendants' citizenship.

10           Plaintiffs challenge diversity of citizenship on two grounds.  First, plaintiffs argue that

11   because defendants' original notice of removal stated that defendants are citizens of Colorado,

12   they are judicially estopped from "changing their citizenship," and because plaintiff Ms. Boleski is

13   also a citizen of Colorado, the parties are not diverse.  Dkt. No. 21 at 3.  Second, plaintiffs contend

14   that the citizenship of Nixplay Cayman, a non-party subsidiary of defendant Nixplay, Inc., should

15   be imputed to Nixplay, Inc., making Nixplay, Inc. a citizen of California, and because Mr.

16   Davidson is also a citizen of California, the parties are not diverse.  Dkt. No. 60 at 1.

17           Defendants respond that they are not judicially estopped from amending their removal

18   notice to cure defective jurisdictional allegations.  Dkt. No. 29 at 7, 9-10.  In addition, defendants

19   argue that the citizenship of Nixplay Cayman is irrelevant to analyzing defendants' citizenship.

20   Dkt. No. 59 at 8-9.  Defendants separately contend that plaintiffs improperly joined plaintiff Ms.

21   Boleski to destroy diversity jurisdiction.  Dkt. No. 29 at 1, 10-11.

22           The Court first considers what the record presented establishes regarding the citizenship of

23   defendants Nixplay, Inc. and Creedon Technologies USA, LLC—*i.e*., the "actual state of

24   things"—at all times relevant to the question of removal jurisdiction.  Then, the Court addresses

25   the parties' remaining disputes regarding defendants' allegations in the amended notice of removal

26   and plaintiffs' addition of Ms. Boleski as a plaintiff in the amended complaint.

27           **A.    Defendants' Citizenship**

28           The Court considers defendants' citizenship as of April 22, 2025 (date the complaint was

United States District Court
Northern District of California

United States District Court
Northern District of California

1    filed in state court) and May 29, 2025 (date of removal to federal district court) for purposes of

2    analyzing diversity jurisdiction. *See* Dkt. Nos. 1, 1-2; *see Strotek*, 300 F.3d at 1131.

3                        **1.      Nixplay, Inc.'s citizenship**

4           For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of

5    every State and foreign state by which it has been incorporated and of the State or foreign state

6    where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

7           Defendants currently assert that Nixplay, Inc.'s state of incorporation is Delaware, and that

8    at all relevant times, its principal place of business is and was in the United Kingdom. Dkt. No. 36

9    at 2; Dkt. No. 59 at 6. Plaintiffs do not dispute that Nixplay, Inc. is incorporated in Delaware. *See*

10   Dkt. No. 21 at 3. Nor do plaintiffs continue to assert, as they did in their motion to remand, that

11   Nixplay, Inc.'s principal place of business is in Colorado. *Compare* Dkt. No. 21 at 3, 8 *with* Dkt.

12   No. 60 at 1. Rather, plaintiffs now contend that Nixplay, Inc. is merely a "shell corporation" with

13   no physical offices and no employees, which operates through a number of related entities,

14   including its subsidiary Nixplay Cayman. Dkt. No. 60 at 1-2. Plaintiffs argue that Nixplay

15   Cayman is the alter ego of defendant Nixplay, Inc., and that Nixplay Cayman's citizenship—

16   which plaintiffs say is California—should be attributed to Nixplay, Inc. for purposes of

17   determining diversity. *Id.* at 3-5. Defendants respond that the citizenship of Nixplay Cayman is

18   not relevant to assessing Nixplay, Inc.'s citizenship. Dkt. No. 59 at 8-9. Defendants also argue

19   that, in any event, Nixplay Cayman is a Cayman Islands exempt company, which is considered a

20   corporation for diversity purposes and is therefore a citizen of the Cayman Islands. *Id.*

21          For purposes of diversity jurisdiction, a corporation's principal place of business is the

22   location where its officers "direct, control, and coordinate the corporation's activities," typically

23   its headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Where a corporation has few,

24   if any, activities, such as a holding company, its principal place of business is the place where it

25   holds its board meetings, unless evidence shows that the corporation is directed from another

26   location. *3123 SMB LLC v. Horn*, 880 F.3d 461, 468, 470 (9th Cir. 2018). The principal place of

27   business is *not* merely the location where its principal officers reside. *Id.* at 469.

28          Although plaintiffs refer to Nixplay, Inc. as a "shell corporation," they do not contend it is

United States District Court
Northern District of California

1    inactive.  Rather, it appears to be undisputed that Nixplay, Inc. is the "top [company]" in a

2    corporate structure that includes several other related entities.  *See* Dkt. No. 60 at 1; Dkt. No. 60-1

3    ¶ 3, Ex. B (organizational chart).  With respect to Nixplay, Inc., the evidence presented shows that

4    at all times since at least April 22, 2025:  (1) Mark Palfreeman was the CEO of Nixplay, Inc., its

5    only officer, and its only director; (2) Nixplay, Inc. had no physical corporate headquarters;[2] (3)

6    Nixplay, Inc. had no employees; (4) Mr. Palfreeman has directed Nixplay, Inc.'s operations and

7    activities from an office in the United Kingdom; (5) reports for "group consolidated accounts" are

8    provided on an annual basis for Nixplay, Inc. and include results for all companies within the

9    Nixplay group of companies; (6) any person or entity that owns shares in Nixplay, Inc. receives a

10   "shareholders report"; (7) although Nixplay, Inc. does not have board meetings, Mr. Palfreeman

11   and other senior managers with responsibility for related Nixplay entities hold virtual meetings

12   "once every other week."  *See* Dkt. No. 29-6 ¶¶ 3, 4, 6; Dkt. No. 59 at 6-7; Dkt. No. 59-1 ¶ 23, Ex.

13   W at 49:15-50:2; Dkt. No. 60 at 2; Dkt. No. 60-1 ¶ 2, Ex. A at 9:20-10:6, 13:10-12, 14:11-13,

14   17:22-18:16, 33:8-25; *see also* Dkt. No. 43 at 10:20-23 (defendants' counsel stating at the hearing

15   that defendants had no employees in the U.S. as of 2025).  Nothing in the record presented

16   following jurisdictional discovery supports plaintiffs' original contention that Nixplay, Inc. had a

17   principal place of business in Colorado at any time relevant to the determination of diversity.  *See*

18   Dkt. No. 21 at 3.  To the contrary, the record supports defendants' amended contention that

19   Nixplay, Inc.'s principal place of business is in the United Kingdom.  Dkt. No. 36 at 2; Dkt. No.

20   59 at 6-7.  Thus, absent evidence of "jurisdictional manipulation" or "an alter ego relationship"

21   between Nixplay, Inc. and a non-diverse entity, Nixplay, Inc. does not share citizenship with any

22   plaintiff.  *See 3123 SMB*, 880 F.3d at 471; *Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d

23   556, 557-58 (9th Cir. 1987) (concluding that a corporation's principal place of business was where

24   the "sole shareholder and director" "made business decisions").

25           Plaintiffs do not contend that Nixplay, Inc. has engaged in manipulation of its corporate

26   form or location in order to create a basis for federal jurisdiction, but they do argue that Nixplay,

27   _____

28   [2] Before the COVID-19 pandemic, Nixplay, Inc. and its related companies had their headquarters
     in Hong Kong.  *See* Dkt. No. 60-1 ¶ 2, Ex. A at 50:1-16.

1    Inc. has an alter ego relationship with its subsidiary Nixplay Cayman, and that Nixplay Cayman's

2    citizenship should be attributed to Nixplay, Inc.  Dkt. No. 60 at 3-5.

3        "[T]he citizenship of a parent is distinct from its subsidiary where . . . there is no evidence

4    of an alter ego relationship." *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir.

5    1992).  To establish the existence of an alter ego relationship, plaintiffs "must make out a prima

6    facie case (1) that there is such unity of interest and ownership that the separate personalities of

7    the two entities no longer exist and (2) that failure to disregard their separate identities would

8    result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal

9    quotation marks, alterations, and citation omitted).  "Total ownership and shared management

10   personnel are alone insufficient to establish the requisite level of control." *Id.*  Instead, the

11   companies must be so intertwined as "to negate the entities' separate personalities." *Id.* at 1074.

12       Plaintiffs have shown neither a unity of interest between Nixplay, Inc. and Nixplay

13   Cayman nor that failure to disregard Nixplay, Inc.'s separate identity would result in injustice in

14   this action.  While Nixplay Cayman is a subsidiary of Nixplay, Inc., it is not wholly owned by its

15   parent company.  *See* Dkt. No. 60-1 ¶ 3, Ex. B.  Mr. Palfreeman is a director of both Nixplay, Inc.

16   and Nixplay Cayman, but he is not the sole director of Nixplay Cayman.  Dkt. No. 60 at 2.  Mr.

17   Palfreeman performs work for all Nixplay entities from one office space, Dkt. No. 60-1 ¶ 2, Ex. A

18   at 46:1-47:8, but "'superficial indicia of interrelatedness' such as shared office space . . . are 'not

19   dispositive of the alter-ego question,'" *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading*

20   *S.A.*, 992 F.3d 893, 898-899 (9th Cir. 2021) (alteration omitted) (quoting *Coastal States Trading,*

21   *Inc. v. Zenith Navigation, S.A.*, 446 F. Supp. 330, 334 (S.D.N.Y. 1977)) (in action to collect

22   arbitration award from alleged alter ego entities, holding that shared office space is insufficient to

23   establish alter ego).  The Court finds no support for plaintiffs' conclusory assertion that "Nixplay,

24   Inc. is merely a shell used to conduct the affairs of Nixplay Cayman." *See* Dkt. No. 60 at 4.

25   Rather, the evidence presented suggests that Nixplay, Inc. has multiple related entities, including

26   Nixplay Cayman, organized to do business in different countries.  *See* Dkt. No. 60-1 ¶ 2, Ex. A at

27   8:25-9:19, 50:18-21; Dkt. No. 60-1 ¶ 3, Ex. B.  Moreover, there is no indication that Nixplay

28   Cayman had any relevant role with respect to plaintiffs' allegations about the digital photo frames

United States District Court
Northern District of California

1   and related services that are at issue in this action, or that plaintiffs are suing Nixplay, Inc. based

2   on the acts of its subsidiary Nixplay Cayman as opposed to the acts of Nixplay, Inc. alone

3   (together with co-defendant Creedon Technologies USA, LLC).  In short, plaintiffs do not offer

4   any persuasive explanation for why the Court should attribute Nixplay Cayman's citizenship to

5   Nixplay, Inc.  Plaintiffs did not name Nixplay Cayman as a defendant in their original complaint,

6   it was not a defendant at the time of removal, and its citizenship is not relevant to the diversity

7   analysis.[3]

## 2.      Creedon Technologies USA, LLC's citizenship

9       For purposes of diversity jurisdiction, a limited liability company, or LLC, "is a citizen of

10  every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage,*

11  *LP*, 437 F.3d 894, 899 (9th Cir. 2006).  "And because a member of a limited liability company

12  may itself have multiple members—and thus may itself have multiple citizenships—the federal

13  court needs to know the citizenship of each 'sub-member' as well."  *McKay v. Fay Servicing,*

14  *LLC*, No. 23-cv-03731-EMC, 2023 WL 4848855, at *1 (N.D. Cal. July 28, 2023) (citation

15  omitted).

16      Defendants currently assert that Creedon Technologies USA, LLC ("Creedon USA") is a

17  limited liability company whose sole member is Creedon Technologies HK Limited ("Creedon

18  HK").  Dkt. No. 36 at 1; Dkt. No. 59 at 7.  They further assert that Creedon HK is a limited

19  company created under Hong Kong law that is considered the equivalent of a U.S. corporation.

20  Dkt. No. 36 at 1-2; Dkt. No. 59 at 7-8.  As such, defendants argue that Creedon HK is a citizen of

21  Hong Kong, where it is registered.  Dkt. No. 59 at 7-8; Dkt. No. 59-1 ¶¶ 7, 9, Exs. G, I .  It is not

22

---

23  [3] Even if Nixplay Cayman's citizenship were attributed to Nixplay, Inc., the Court is not
persuaded that Nixplay Cayman can properly be considered an LLC; rather, the relevant authority

24  supports defendants' argument that Nixplay Cayman should be considered a corporation for
purposes of diversity.  *See, e.g.*, *Rosenblatt v. Ernst & Young Int'l, Ltd.*, 28 F. App'x 731, 733

25  (2002) (treating Cayman Islands corporation as a U.S. corporation because "[s]ection 1332 draws
no distinction between corporations incorporated within the United States and those incorporated

26  in a foreign state"); *Roosevelt REO PR, Corp. v. Silva-Navarro*, No. 16-cv-1036 (ADC), 2020 WL
1493904, at *3 (D.P.R. Mar. 25, 2020) (holding that exempt companies organized under the laws

27  of the Cayman Islands are corporations for purposes of diversity jurisdiction), *aff'd*, No. 20-1442,
2022 WL 10480837 (1st Cir. May 6, 2022).  As such, it appears that Nixplay Cayman is a Cayman

28  Islands company with a principal place of business in the United Kingdom, not California.

United States District Court
Northern District of California

1    entirely clear where Creedon HK has its principal place of business. Defendants contend that its

2    operations are directed from the United Kingdom and thus, the United Kingdom is its principal

3    place of business. Dkt. No. 36 at 1-2; Dkt. No. 59 at 8. Thus, according to defendants, Creedon

4    USA is a citizen of Hong Kong and the United Kingdom.

5        Initially, plaintiffs argued that Creedon USA was at all relevant times a citizen of

6    Minnesota and Colorado.[4] *See* Dkt. No. 21 at 3-4. However, following jurisdictional discovery,

7    plaintiffs appear to have abandoned this argument, as their supplemental brief does not address

8    Creedon USA's citizenship or dispute the assertions in defendants' Rule 7.1 disclosure statement.

9    *See generally* Dkt. No. 60. In any event, plaintiffs do *not* contend that Creedon HK, Creedon

10   USA's sole member, is a citizen of Illinois, California, or Colorado such that Creedon USA would

11   share citizenship with any of the plaintiffs.

12       As defendants observe, other courts have treated Hong Kong limited liability companies as

13   analogous to U.S. corporations and therefore citizens of their place of incorporation and principal

14   place of business. *See Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp.*, 932 F.3d 1102, 1105 (8th

15   Cir. 2019) ("[A] Hong Kong limited company is equivalent to a U.S. corporation under § 1332.");

16   *Zhu Zhai Holdings Ltd. v. Ivankovich*, No. 21-3038, 2022 WL 1439396, at *1 (7th Cir. May 6,

17   2022) (affirming district court had subject matter jurisdiction because a Hong Kong limited

18   liability company "is treated as a corporation for purposes of American law"); *Flextronics Int'l*

19   *USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852, 859-61 (N.D. Ill.

20   2016) (holding defendants that were Hong Kong limited companies should be treated as U.S.

21   corporations and were citizens of Hong Kong). Plaintiffs do not address this authority.

22       Accordingly, the Court concludes that Creedon USA is a citizen of Hong Kong and the

23   United Kingdom for diversity purposes.

24                                                    ***

25

26   [4] Plaintiffs originally argued that Creedon USA is a citizen of Colorado because it has an office in
     Colorado. Dkt. No. 21 at 3-4. As noted above, an LLC's office location is not relevant to
27   determining the citizenship of the LLC. *See Johnson*, 437 F.3d at 899. Moreover, the record is
     now undisputed that defendants had no offices in the United States as of April 2025. *See*
28   *generally* Dkt. No. 60; *see also* Dkt. No. 29-6 ¶¶ 4, 6; Dkt. No. 59 at 1, 7; Dkt. No. 59-1 ¶ 23, Ex.
     W at 39:1-40:14; Dkt. No. 60-1 ¶ 2, Ex. A at 10:1-6, 13:13-25, 18:2-6, 46:15-47:1.

United States District Court
Northern District of California

1    Having analyzed the citizenship of defendants Nixplay, Inc. and Creedon Technologies

2    USA, LLC as of April 22, 2025 (date the complaint was filed in state court) and May 29, 2025

3    (date of removal to federal district court), the Court concludes that no defendant is a citizen of the

4    same state as any plaintiff.

5    **B.    Amendments to the Complaint and Notice of Removal**

6    The parties dispute the propriety of amendments to the complaint and to the notice of

7    removal.  Plaintiffs contend that defendants are bound by their original notice of removal stating

8    that Nixplay, Inc. is a citizen of Colorado and that Creedon Technologies USA, LLC has offices in

9    Colorado.  Dkt. No. 21 at 3.  Plaintiffs argue that judicial estoppel applies to bar defendants'

10    amended notice which omits any reference to defendants' citizenship in Colorado.  *Id.*

11    Meanwhile, defendants oppose plaintiffs' joinder of Ms. Boleski, on the grounds that she lacks

12    standing and was added to the complaint "solely to defeat diversity jurisdiction."  Dkt. No. 29 at

13    10-11.

14    The Court addresses defendants' argument regarding plaintiffs' joinder of Ms. Boleski

15    first, then addresses plaintiffs' judicial estoppel argument.

16    **1.    Joinder of Ms. Boleski**

17    Defendants argue that plaintiffs improperly joined Ms. Boleski as a plaintiff because her

18    claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or

19    occurrences" as the other plaintiffs.  Dkt. No. 29 at 3, 10-11.  Specifically, defendants argue that

20    joinder is improper because Ms. Boleski "bought a different digital frame, from a different vendor,

21    in a different state tha[n] the other plaintiffs."  *Id.* at 3.[5]  Plaintiffs respond that joinder is proper

22    because each plaintiff claims reliance on the same alleged misrepresentation—i.e., "that Nixplay's

23    digital photo frames included 10 GB of free cloud storage with no additional subscription

24    required."  Dkt. No. 31 at 5.

25    Rule 20 of the Federal Rules of Civil Procedure permits plaintiffs to join their claims in

26

_____

27    [5] Defendants separately move to dismiss Ms. Boleski's claims on this and other grounds.  Dkt. No.
18.  The Court addresses those arguments in a separate order.  However, the Court notes that in

28    their motion to dismiss, defendants acknowledge that "the same core factual allegations underlie
all of [p]laintiffs' claims."  Dkt. No. 18 at 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    one action if (1) "they assert any right to relief jointly, severally, or in the alternative with respect

2    to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and

3    (2) "any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P.

4    20(a)(1)(A)-(B); *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).  While

5    several of plaintiffs' claims appear to rely on different factual allegations and/or different

6    questions of law, the Court agrees with plaintiffs that, on the present record, joinder is proper

7    because each plaintiff, including Ms. Boleski, asserts claims grounded in common allegations

8    regarding defendants' purported misrepresentation about the digital photo frames.  *See McAfee v.*

9    *Francis*, No. 11-cv-00821-LHK, 2012 WL 762118, at *4 (N.D. Cal. Mar. 6, 2012) ("[E]ven when

10   the underlying contract claims are predicated on different transactions and occurrences, allegations

11   of fraud and misrepresentation may constitute a transaction or series of transactions under Rule

12   20(a) when they are part of a common scheme."); *see also League to Save Lake Tahoe v. Tahoe*

13   *Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (noting that Rule 20 "is to be construed

14   liberally in order to promote trial convenience and to expedite the final determination of disputes,

15   thereby preventing multiple lawsuits").

16        Second, defendants contend that joinder is improper because Ms. Boleski's "inclusion in

17   the FAC appears to be solely to defeat diversity jurisdiction, a purpose which should not be

18   countenanced by this Court."  Dkt. No. 29 at 11.  Even if plaintiffs joined Ms. Boleski solely to

19   destroy diversity, such a purpose does not make the joinder improper.  As the Supreme Court has

20   observed, "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's

21   jurisdiction depends on what the new complaint says." *Royal Canin*, 604 U.S. at 30.  The plaintiff

22   is "the master of the complaint," and can choose to destroy diversity of citizenship.  *Id.* at 35.

23   Therefore, the Court does not find plaintiffs' amendment adding Ms. Boleski improper simply

24   because the amendment was intended in whole or in part to defeat diversity jurisdiction.  As it

25   happens, the fact that Ms. Boleski is a citizen of Colorado is immaterial to the question of

26   diversity jurisdiction in this case.

27        **2.    Amendment of Notice of Removal**

28        Plaintiffs argue that the doctrine of judicial estoppel applies to bar defendants' amendment

12

1    of their removal notice, and that defendants should be bound by their initial assertions that they are

2    citizens of Colorado.  Dkt. No. 21 at 6.  Plaintiffs contend that defendants' change in citizenship

3    constitutes "gamesmanship . . . given the Court's implicit acceptance and reliance on Defendants'

4    prior inconsistent position regarding their offices in Colorado and Colorado citizenship."  *Id.*

5    Defendants respond that judicial estoppel does not apply because the Court did not rely upon or

6    accept defendants' previous statements regarding citizenship.  Dkt. No. 29 at 7.  Defendants also

7    contend that judicial estoppel is inapplicable because their earlier statements about their presence

8    in Colorado reflect mistakes of fact.  *Id.* at 10.

9         Judicial estoppel is an equitable doctrine that prevents a party from benefiting by taking

10   one position but then later seeking to benefit by taking a clearly inconsistent position.  *Hamilton v.*

11   *State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  Judicial estoppel may be

12   invoked by the court at its discretion.  *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991).  It

13   is intended to protect the integrity of the judicial process by preventing a litigant from "playing

14   fast and loose with the courts."  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal

15   quotation and citation omitted).

16        Several factors may be considered in determining whether judicial estoppel applies.  *New*

17   *Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).  First, a party's later position must be "clearly

18   inconsistent" with its earlier position.  *Id.* at 750.  Second, the party must have "succeeded in

19   persuading a court to accept that party's earlier position."  *Id.*  Third, "the party seeking to assert

20   an inconsistent position would derive an unfair advantage or impose an unfair detriment on the

21   opposing party if not estopped."  *Id.* at 751.  These factors are not "inflexible prerequisites or an

22   exhaustive formula" because "[a]dditional considerations may inform the doctrine's application in

23   specific factual contexts."  *Id*.  A court may also consider whether the party to be estopped acted

24   inadvertently or with an intent to defraud the court.  *Id.* at 753 ("[I]t may be appropriate to resist

25   application of judicial estoppel 'when a party's prior position was based on inadvertence or

26   mistake.'") (internal citation omitted); *Johnson v. State, Oregon Dep't of Hum. Res., Rehab. Div.*,

27   141 F.3d 1361, 1369 (9th Cir. 1998) ("If incompatible positions are based not on chicanery, but

28   only on inadvertence or mistake, judicial estoppel does not apply.").

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**a.    The Court did not rely on defendants' earlier statements about presence or citizenship in Colorado.**

First, the Court agrees with defendants that judicial estoppel does not apply because the Court did not rely upon or accept defendants' earlier statements that they are citizens of Colorado. *See* Dkt. No. 29 at 9-10. Indeed, the Court directed all parties to file Rule 7.1 statements regarding their citizenship, in part, because it found that defendants' earlier filings had not properly disclosed their citizenship in accordance with the rules for evaluating the citizenship of corporations and LLCs. *See* Dkt. No. 33.

Moreover, defendants' original removal notice did not disclose Creedon Technologies USA, LLC's citizenship. *See* Dkt. No. 1. It merely stated, "Defendant Creedon Technologies USA, LLC is a Minnesota Limited Liability Company with offices in Minnesota and Colorado. Creedon Technologies USA, LLC is owned by Creedon Technologies HK Limited, a company incorporated in Hong Kong, and has no members or owners who are citizens of California or Illinois." *Id.* ¶ 5. That is, Creedon Technologies USA, LLC identified states in which it is *not* a citizen, but did not affirmatively allege where it *is* a citizen. The amended notice of removal stated (incorrectly) that Creedon Technologies USA, LLC is a citizen of Minnesota. As explained above, because Creedon Technologies USA, LLC is a limited liability company, its citizenship is determined by the citizenship of its members. The amended notice failed to identify all of Creedon Technologies USA, LLC's members and the citizenship of those members. *See* Dkt. No. 19 ¶ 6. As before, the amended notice merely stated where Creedon Technologies USA, LLC is *not* a citizen. Since Creedon Technologies USA, LLC's members and the citizenship of those members were not disclosed in the original notice or in the amended notice, the Court did not rely upon or accept defendants' earlier statements about their citizenship.

**b.    Judicial estoppel is improper where earlier statements were based on inadvertence or mistake.**

In support of their claim that defendants fraudulently assert diversity jurisdiction, plaintiffs point to emails sent by Nixplay, Inc. in April 2025 and August 2025 that identify Denver, Colorado as the location of Creedon Technologies USA, LLC in the footer section. *See* Dkt. No. 21 at 6, 9; Dkt. No. 21-1 ¶¶ 7, 10, Exs. 7, 11. Plaintiffs also note that on August 6, 2025, after

1    plaintiffs informed defendants of their intent to move to remand this case, Creedon Technologies

2    USA, LLC filed an annual renewal with the Minnesota Secretary of State changing its principal

3    executive office address from a Colorado address to a Minnesota address.[6] Dkt. No. 21 at 8; Dkt.

4    No. 21-1 ¶ 4, Exs. 1, 2.

5        Nevertheless, judicial estoppel does not apply because the Court finds that defendants'

6    prior assertions were based on "inadvertence or mistake," rather than an "intent to mislead the

7    Court," as plaintiffs allege. According to defendants' supplemental brief,[7] jurisdictional discovery

8    confirmed that neither Nixplay, Inc. nor Creedon Technologies USA, LLC had a principal place of

9    business in Colorado at any relevant time. Dkt. No. 59 at 1. Nixplay, Inc.'s office and workspace

10   leases in Colorado ended by August 2024; its CEO, Mark Palfreeman, has directed Nixplay, Inc.'s

11   operations from a location in the United Kingdom since 2022; Nixplay, Inc.'s Denver-based COO

12   resigned from the company in January 2024; and Nixplay, Inc. terminated its U.S. professional

13   services provider later in the same year because it no longer had any employees in the U.S. *Id.*

14   Defendants acknowledge that their initial representations about Nixplay, Inc's presence in

15   Colorado were mistaken. *Id.* at 2, 6-7; Dkt. No. 59-1. As for Creedon Technologies USA, LLC,

16   its citizenship is determined by the citizenship of its members, not by the location of its office or

17   its state of creation. As noted above, plaintiffs do not dispute the Hong Kong citizenship of

18   Creedon Technologies USA, LLC's sole member Creedon Technologies HK Limited, nor do they

19   still contend that Creedon Technologies USA, LLC is a citizen of Colorado.

20       Plaintiffs have not shown that defendants changed anything about the structure or location

21   _____

22   [6] Plaintiffs also reference documents dated April 2, 2024, April 29, 2024, and May 21, 2024 that
     purportedly demonstrate defendants' presence in Colorado. Dkt. No. 21 at 8. The Court does not
23   consider those documents as they predate the date of filing in state court (April 22, 2025) and the
     date of removal (May 29, 2025).

24   [7] "[I]t is proper to treat the removal petition as if it had been amended to include the relevant
25   information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n.3
     (1969); *see also Wang v. Asset Acceptance, LLC*, 680 F. Supp. 2d 1122, 1125 (N.D. Cal. 2010)
26   ("The evidence offered in opposition to a motion to remand can be construed as an amendment to
     the notice of removal."); *Atkinson v. Urb. Land Pres., LLC*, No. 15-cv-03689-YGR, 2015 WL
27   13036667, at *1 n.1 (N.D. Cal. Nov. 4, 2015) (denying plaintiff's request to dismiss the removal
     notice as defective for failing to include citizenship of LLC defendant's members because
28   defendants had provided the missing information in response to the court's order to show cause to
     confirm diversity).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of their operations after the filing of this action in April 2025 in order to manufacture diversity of

2    citizenship, and there is no other evidence of "gamesmanship."  *Cf. Spekulation Orphan Relief Tr.*

3    *v. NewRez, LLC*, No. 23-3484, 2025 WL 2028306, at \*2 (9th Cir. July 21, 2025) (affirming district

4    court's finding that plaintiff had attempted to destroy diversity by obtaining Delaware citizenship

5    after filing initial state-court complaint but before filing amended complaint).  Rather,

6    investigation by defendants revealed defective allegations in their original notice of removal which

7    defendants subsequently corrected.  Such amendments are permissible.  *See Barrow*, 418 F.2d at

8    317-18 (permitting amendment of removal notice where the notice failed to disclose corporation's

9    state of incorporation and principal place of business); *Emeryville Redevelopment Agency v. Clear*

10   *Channel Outdoor*, No. 06-cv-01279 WHA, 2006 WL 1390561, at \*3 (N.D. Cal. May 22, 2006)

11   (permitting amendment of removal notice that did not include any information about corporation

12   defendant's citizenship because such amendment is a "technical amendment" rather than a

13   "substantive amendment").

14          Accordingly, the Court finds that judicial estoppel does not apply.  The "facts on the

15   ground" establish that the parties are completely diverse as plaintiffs are citizens of Illinois,

16   California, and Colorado, and defendants are citizens of Delaware, the United Kingdom, and Hong

17   Kong.

18   **IV.    CONCLUSION**

19          For the reasons explained above, the Court denies plaintiffs' motion to remand this action

20   to state court.

21          **IT IS SO ORDERED.**

22   Dated: January 8, 2026

23

24                                                      Virginia K. DeMarchi

25                                                      Virginia K. DeMarchi
                                                        United States Magistrate Judge

26

27

28

16